NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0041n.06

No. 14-3171

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
***Jan 13, 2015***
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| OLGA CELINA ROMERO-CRUZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE:  BOGGS and McKEAGUE, Circuit Judges; PEARSON, District Judge.[*]

PER CURIAM.  Olga Celina Romero-Cruz, a native and citizen of Honduras, petitions this court for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from the denial of her application for withholding of removal.  We deny the petition for review.

In 2010, the Department of Homeland Security served Romero-Cruz with a notice to appear in removal proceedings, charging her with removability as an alien present in the United States without being admitted or paroled.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  In an appearance before an immigration judge (IJ), Romero-Cruz admitted the factual allegations set forth in the notice to appear, with the exception that she claimed that she entered the United States in December 2002, and conceded removability as charged.  Romero-Cruz filed an application for

---

[*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

withholding of removal based on her membership in a particular social group. At the merits

hearing, Romero-Cruz claimed membership in two particular social groups: (1) Honduran

nurses who have had children die in their care and are blamed for the deaths by the parents and

(2) Honduran nationals returning from the United States who are perceived by gang members as

having money. Denying the application for withholding of removal, the IJ found that Romero-

Cruz was not credible and went on to conclude that, even if credible, she failed to demonstrate

past persecution or a clear probability of persecution in Honduras. On appeal, the BIA found

that there was no clear error in the IJ's adverse-credibility determination and determined that,

even if credible, Romero-Cruz did not meet her burden of proof.

Romero-Cruz petitions this court for review of the BIA's decision, asserting that she met

the burden of proof for withholding of removal by establishing a clear probability of persecution

in Honduras. Where, as here, "the BIA reviews the immigration judge's decision and issues a

separate opinion, rather than summarily affirming the immigration judge's decision, we review

the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th

Cir. 2009). To the extent that the BIA adopted the IJ's reasoning, we also review the IJ's

decision. *Id*. Administrative factual findings, including credibility determinations, are reviewed

for substantial evidence and "are conclusive unless any reasonable adjudicator would be

compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Slyusar v. Holder*,

740 F.3d 1068, 1072-73 (6th Cir. 2014).

Romero-Cruz fails to address the IJ's adverse-credibility determination, which was

upheld by the BIA. Romero-Cruz has therefore waived review of that determination. *See*

*Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005). In any event, substantial evidence

supports the adverse-credibility determination. Romero-Cruz testified that she worked as a nurse

on a pediatric floor at a hospital in Honduras. After a child died during Romero-Cruz's shift, the father returned to the hospital the following week with a knife and indicated that he was going to stab her, but a security guard removed him from the hospital. Romero-Cruz omitted this incident from her written application for withholding of removal. Romero-Cruz was adamant in her testimony that this incident occurred in 2002, but the police report—the only corroboration of this incident—stated that she filed a complaint in 2000. This discrepancy is relevant because she claims to have left Honduras eight or nine months after the incident. The record does not compel a conclusion contrary to the adverse-credibility determination, which is fatal to Romero-Cruz's claim for withholding of removal. *See Slyusar*, 740 F.3d at 1072.

Even if we consider the merits of her claim for withholding of removal, substantial evidence supports the conclusion that Romero-Cruz failed to meet her burden of showing a clear probability of persecution in Honduras on account of her membership in a particular social group cognizable under the Immigration and Nationality Act (INA). *See* 8 U.S.C. § 1231(b)(3)(A); *Khozhaynova v. Holder*, 641 F.3d 187, 192-93 (6th Cir. 2011). The alleged social group must be socially visible—that is, "the set of individuals with the shared characteristic would be perceived as a group by society." *Umana-Ramos v. Holder*, 724 F.3d 667, 672 (6th Cir. 2013). There is no evidence that nurses who have had children die in their care and are blamed for the deaths by the parents are perceived as a distinct segment of Honduran society. Furthermore, Romero-Cruz conceded that she was unaware of any other nurses who were attacked or killed by a parent of a child who died in their care. As for Romero-Cruz's claim that gang members will perceive her as having money because she has lived in the United States for a long time, this court has held that "criminal exploitation motivated by the perceived wealth of former inhabitants of the United States is not tantamount to persecution based on a protected ground." *Cano-Huerta v. Holder*,

568 F. App'x 371, 373 (6th Cir. 2014); *see Vindel v. Holder*, 504 F. App'x 396, 398 (6th Cir. 2012) (holding that persons perceived by Honduran gangs as having money due to their lengthy residence in the United States did not constitute a particular social group for purposes of the INA).

For the foregoing reasons, we deny Romero-Cruz's petition for review.